Affirmed and Memorandum Opinion filed May 19, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00209-CR

___________________

 

PRINSTON MORTEL
WILLIAMS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee



 



 

On
Appeal from the 228th District Court

Harris County,
Texas



Trial Court Cause No. 1136639

 



 

 

MEMORANDUM OPINION

            Appellant, Prinston Mortel Williams, was
charged with capital murder but convicted of the lesser-included offense of
aggravated robbery.  In a single issue, appellant contends the trial erred by
admitting three autopsy photographs.  We affirm. 

 

Background

            In October 2007,
appellant and his brother entered an illegal gaming establishment, shot a
security guard (the “decedent”) in his left thigh, robbed an employee at
gunpoint, and then left the scene.[1] 
The decedent later died from loss of blood caused by the gunshot wound.

            Appellant was
apprehended and charged with capital murder.  The jury acquitted appellant of
capital murder but convicted him of the lesser-included offense of aggravated
robbery and sentenced him to life imprisonment.        

Autopsy Photographs

            In his sole
issue, appellant contends the trial court erred by admitting three autopsy
photographs, State’s Exhibits 116, 117, and 118, because the probative value of
the photographs was substantially outweighed by the danger of unfair prejudice.
 See Tex. R. Evid. 403.  

A.  
Applicable Law and Standard of Review

Under Texas Rule of Evidence 403, relevant evidence “may be excluded if
its probative value is substantially outweighed by the danger of unfair
prejudice[.]”  Tex. R. Evid. 403.[2]  The admissibility of photographs is within the trial
court’s sound discretion, and we will not reverse the court’s ruling unless it
falls outside the zone of reasonable disagreement.  Resendiz v. State,
112 S.W.3d 541, 544 (Tex. Crim. App. 2003).  

In determining whether the probative value of evidence is substantially
outweighed by the danger of unfair prejudice, we consider (1) the probative
value of the evidence, (2) the potential to impress the jury in some irrational, yet indelible, way, (3)
the time needed to develop the evidence, and (4) the proponent’s need for the
evidence.  Erazo v. State, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). 
Additionally, we consider many factors in determining whether the trial court
violated Rule 403 by admitting autopsy photographs, including (1) the number of
exhibits offered, (2) their gruesomeness, (3) their detail, (4) their size, (5)
whether they are in color or black-and-white, (6) whether they are close up,
(7) whether the body depicted is clothed or naked, (8) the availability of
other means of proof, and (9) other circumstances unique to the individual
case.  Davis v. State, 313
S.W.3d 317, 331 (Tex. Crim. App. 2010).  Generally, photographs are admissible
if verbal testimony about the matters depicted in the photographs would be
admissible and their probative value is not substantially outweighed by any of
the Rule 403 counter-factors.  Threadgill v. State, 146 S.W.3d 654, 671
(Tex. Crim. App. 2004).  Further, autopsy photographs are generally admissible
unless they depict mutilation of the victim caused by the autopsy itself.  Salazar
v. State, 38 S.W.3d 141, 151 (Tex. Crim. App. 2001) (quoting Rojas v.
State, 986 S.W.2d 241, 246 (Tex. Crim. App. 1998)).  However,
mutilation caused during an autopsy is not necessarily fatal to the
admissibility of a photograph if the photograph is highly probative of the
medical examiner’s findings and conclusions or when it allows the jury to see
an internal injury.  See Gallo v. State, 239 S.W.3d 757, 763
(Tex. Crim. App. 2007); Harris v. State, 661 S.W.2d 106, 108 (Tex. Crim.
App. 1983).  

B.   Analysis

            Before
determining whether the trial court erred by admitting the challenged
photographs, it is important to reiterate appellant was on trial for capital
murder although he was ultimately convicted of the lesser-included offense
of aggravated robbery.  See Prible v. State, 175 S.W.3d 724,
736 & n.25 (Tex. Crim. App. 2005) (explaining trial court erred by
admitting autopsy photographs of children because, “most important,” defendant
was not charged with murdering the children.).  Therefore, in context, the
State introduced the photographs while presenting a murder case.

The State presented the testimony and autopsy report
of Luisa Florez, M.D., the medical examiner who performed the decedent’s
autopsy.  Dr. Florez testified that the twenty-four autopsy photographs
admitted into evidence, including State’s Exhibits 116, 117, and 118, “would
aid the jury in discussing the cause and manner of death of [the decedent].” 
Several unchallenged photographs depict close-up views of the entry and exit
wounds on the decedent’s thigh caused by the bullet.  Dr. Florez testified that
the entry wound was caused by a contact gunshot wound, meaning the gun was
fired while the barrel was contacting the decedent’s thigh.  Dr. Florez
concluded the decedent’s death resulted from loss of blood caused by the
gunshot wound.

Dr. Florez testified there
was no precise method for determining the amount
of blood lost by the decedent as a result of the gunshot wound, but that an
indirect method was to observe how pale the decedent’s organs were.  State’s
Exhibit 116 is a photograph depicting the decedent’s liver and spleen lying on
a table.  Dr. Florez explained that the
decedent’s liver should be a “dark red brown[ color,]” but the photograph
reflected that liver was “very pale.”

We acknowledge appellant did not dispute the cause of
the decedent’s death.  Nevertheless, probative autopsy photographs may be
admissible even when cause of death is undisputed.  See Holford v.
State, 177 S.W.3d 454, 464 (Tex. App.—Houston [1st Dist.] 2005, pet.
ref’d); see also Newbury v. State, 135 S.W.3d 22, 41–44 (Tex. Crim.
App. 2004).  State’s Exhibit 116 is relatively large in size (seven inches by
eleven inches), in full color, and depicts close and detailed views of the
decedent’s liver and spleen.  However, the photograph is not excessively
gruesome: the organs are not dripping in blood or covered in other tissue but
are simply presented on a clean table.  A photograph depicting internal organs
that have been removed from the decedent is not considered to be a depiction of
mutilation of the decedent because there is no danger the jury would attribute
the removal of the organs to the defendant.  See Salazar, 38 S.W.3d at 151–52. 
Additionally, the photograph supported and complimented Dr. Florez’s conclusion
that the decedent died from blood loss because it depicts the pale coloration
of the decedent’s liver, indicating he had lost a great amount of blood.  See
Erazo, 144 S.W.3d at 491 (“A photograph should add something that is
relevant, legitimate, and logical to the testimony that accompanies it and that
assists the jury in its decision-making duties.”).  Thus, considering all
factors, we conclude the trial court did not abuse its discretion by admitting State’s
Exhibits 116.     

Dr. Florez also testified that she dissected the
gunshot-wound area to determine what internal injuries occurred.  State’s
Exhibits 117 and 118 depict close-up views of the decedent’s left thigh after
Dr. Florez dissected the thigh and refracted the tissue to display the thigh’s
interior.  A metal probe was placed where the femoral artery would have been
located in the thigh before it was transected by the bullet.  Dr. Florez
testified that transection of the femoral artery caused a large hematoma on the
decedent’s thigh and demonstrated this finding by describing State’s Exhibit
117 as follows: “And the vessel [the femoral artery] I’m talking about is this
one.  It should run all the way from the bifurcation really of the aorta down.  And
as you can see, I put up a probe in one end of the vessel and there’s no vessel
here.  So, it’s like completely gone.  [The bullet] just took this whole chunk
of the vessel away.”  During cross-examination, Dr. Florez agreed the gunshot
wound would have been non-fatal if the bullet had not transected the femoral
artery. 

State’s Exhibits 117 and 118
are seven inches by eleven inches in size, in full color, and depict close and
detailed views of the decedent’s dissected thigh.  Admittedly, these
photographs are more gruesome than the other
photographs in the record because they reveal internal injuries to the thigh.  However,
in order to depict the transection of the femoral artery, an injury that was
not otherwise visible, Dr. Florez needed to show the interior of the decedent’s
thigh.  See Gallo, 239 S.W.3d at 763 (concluding trial court did not err by admitting photographs of the
decedent’s rib, skull cap, and brain, all visible due to the decedent’s
autopsy, because they were necessary to show the injuries sustained); Harris,
661 S.W.2d at 108 (concluding trial did not err
by admitting photograph of decedent’s skull with skin refracted because it was
necessary to show the skull fracture); see also Davis, 313
S.W.3d at 331 (concluding trial court did not err by admitting photograph of
cross-section of decedent’s tongue because it was “not excessively gruesome and
was necessary to show injury not otherwise visible”).  The photographs
supported and complimented Dr. Florez’s conclusion that the bullet transected
the decedent’s femoral artery, causing him to bleed profusely.  See Erazo,
144 S.W.3d at 491.  Further, no other exhibit demonstrated this internal injury;
Dr. Florez’s autopsy report did not contain a diagram of the interior of a
thigh.  Finally, there was no danger the jury
would believe appellant caused the depicted mutilation because the jury saw
other photographs of the gunshot wound before dissection and Dr. Florez
explained that she dissected the thigh to determine internal injuries.  See Gallo,
239 S.W.3d at 763.  Considering all factors, we
conclude the trial court did not abuse its discretion by admitting State’s
Exhibits 117 and 118.

Accordingly, we overrule appellant’s sole issue and affirm the trial
court’s judgment.

 

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

Panel consists of Justices
Anderson, Seymore, and McCally.

Do Not Publish — Tex. R. App.
P. 47.2(b).

 









[1] Whether it was appellant
or his brother who possessed and used the gun is irrelevant in this appeal.





[2] “Probative
value” refers to the inherent probative force of an item of evidence—that is,
how strongly it serves to make more or less probable the existence of a fact of
consequence to the litigation—coupled with the proponent’s need for that item
of evidence.  Gigliobianco v. State, 210 S.W.3d 637, 641 (Tex. Crim.
App. 2006).  “Unfair prejudice” refers to a tendency to suggest decision on an
improper basis, commonly, though not necessarily, an emotional one.  Id.